HONORABLE BENJAMIN H. SETTLE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COLUMBIA RIVERKEEPER,<br><br>    Plaintiff,<br><br>    v.<br><br>PORT OF VANCOUVER U.S.A.; and METROPOLITAN STEVEDORE COMPANY,<br><br>    Defendants,<br><br>    and<br><br>VANCOUVER BULK TERMINAL LLC,<br><br>    Defendant-Intervenor. | Case No. 3:21-cv-05486-BHS<br><br>CONSENT DECREE BETWEEN PLAINTIFF COLUMBIA RIVERKEEPER AND DEFENDANTS PORT OF VANCOUVER U.S.A. AND METROPOLITAN STEVEDORE COMPANY AND DEFENDANT-INTERVENOR VANCOUVER BULK TERMINAL LLC |

## I.     STIPULATIONS.

Defendant Port of Vancouver U.S.A. ("Port") is a Washington State port district that owns approximately four miles of riverfront property along the Columbia River west of downtown Vancouver, Washington that is depicted in Exhibit 1 to this Consent Decree.

The Port discharges stormwater associated with industrial activity from the area depicted as "Port ISGP" on the figure attached hereto as Exhibit 1, which area shall be referred to herein as the "Port Facility", under a permit issued by the Washington Department of Ecology

CONSENT DECREE - 1
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

("Ecology") under National Pollutant Discharge Elimination System ("NPDES") Permit No. WAR000424 ("Port Permit").

The Port leases out certain areas and structures within the Port facility for a dry bulk commodities terminal ("Bulk Terminal") that is used to receive via rail bulk commodities, including copper ore, to store those commodities, and then to load the commodities onto vessels for export on the Columbia River.

Plaintiff Columbia Riverkeeper ("Riverkeeper") issued a notice of intent to sue letter to the Port dated November 5, 2020, and filed a Complaint on July 7, 2021, under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging that the Port is in violation of certain terms and conditions of the Port Permit and that the Port is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging copper ore and other pollutants from operations at the Bulk Terminal to waters of the United States in a manner not authorized by an NPDES permit.

Riverkeeper filed the First Amended Complaint on October 18, 2021, alleging that the Port is in violation of certain terms and conditions of the Port Permit and that the Port is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging copper ore and other pollutants from operations at the Bulk Terminal to waters of the United States in a manner not authorized by an NPDES permit.

Riverkeeper issued another notice of intent to sue letter to the Port dated October 19, 2021 and filed the Second Amended and Supplemental Complaint on December 29, 2021, under section 505 of the CWA, 33 U.S.C. § 1365, alleging that the Port is in violation of certain terms and conditions of the Port Permit and that the Port is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging copper ore and other pollutants from operations at the Bulk Terminal to waters of the United States in a manner not authorized by an NPDES permit.

Defendant Metropolitan Stevedore Company ("Metro") entered a lease agreement and operating agreement with the Port for the Bulk Terminal. Metro began operating the Bulk

CONSENT DECREE - 2
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Terminal on or about January 1, 2022. Ecology issued Metro NPDES Permit No. WAR310936 ("Bulk Terminal Permit") authorizing discharges of stormwater associated with industrial activity effective December 30, 2021.

Riverkeeper issued a notice of intent to sue letter to Metro dated September 23, 2022, and a second notice of intent to sue letter dated December 2, 2022 alleging that Metro is in violation of certain terms and conditions of the Bulk Terminal Permit and that Metro is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging copper ore and other pollutants from operations at the Bulk Terminal to waters of the United States in a manner not authorized by an NPDES permit.

Riverkeeper filed its Third Amended and Supplemental Complaint on April 7, 2023, under section 505 of the CWA, 33 U.S.C. § 1365, alleging that the Port is in violation of certain terms and conditions of the Port Permit, that Metro is in violation of certain terms and conditions of the Bulk Terminal Permit, and that the Port and Metro are in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging copper ore and other pollutants from operations at the Bulk Terminal to waters of the United States in a manner not authorized by an NPDES permit.

The lease and operating agreements between Metro and the Port expired and Metro ceased operations at the Bulk Terminal on May 31, 2023.

Defendant-Intervenor Vancouver Bulk Terminal LLC ("VBT") entered into a lease agreement with the Port for the Bulk Terminal ("Lease Agreement") and VBT began operating the Bulk Terminal on or about June 1, 2023. The Bulk Terminal Permit was transferred to VBT effective June 1, 2023.

The Lease Agreement has a term of thirty years, from June 1, 2023 through May 31, 2053, with two options to extend the term for ten years each. Section 15.B of the Lease Agreement provides that VBT is to complete and have operational a rotainer system for handling copper at the Bulk Terminal no later than December 31, 2027, unless the Port and VBT agree on

CONSENT DECREE - 3
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

an alternative system that provides comparable or greater benefits, including environmental benefits, or copper operations at the Bulk Terminal shall be terminated. The rotainer system is expected to cost approximately $25.5 million and it is expected to substantially reduce opportunities for copper ore handled at the Bulk Terminal to contaminate stormwater or discharge to the Columbia River.

Riverkeeper issued a notice of intent to sue letter to VBT dated July 5, 2023 alleging that VBT is in violation of certain terms and conditions of the Bulk Terminal Permit and that VBT is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), for discharging copper ore and other pollutants from operations at the Bulk Terminal to waters of the United States in a manner not authorized by an NPDES permit.

Riverkeeper's Third Amended and Supplemental Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation expenses, including attorney and expert fees, against the Port and Metro.

The Port, Metro, and VBT do not admit and expressly deny liability for all of Riverkeeper's claims alleged in the notice of intent to sue letters and in the Complaint, the First Amended Complaint, the Second Amended and Supplemental Complaint, and the Third Amended and Supplemental Complaint (collectively, the "Complaints").

Solely for the purposes of this Consent Decree, the Port, Metro, VBT, and Riverkeeper (collectively, the "Parties") stipulate that the Court has jurisdiction over the Parties and the subject matter of this action under section 505(a) of the CWA, 33 U.S.C. § 1365(a).

The Parties agree that settlement of this matter is in the best interest of the Parties and the public and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action. The Parties agree that this Consent Decree is fair, reasonable, equitable, does not violate the law or public policy, comes within the scope of the pleadings, and furthers the broad objectives upon which Riverkeeper based the Complaints. *See Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990).

CONSENT DECREE - 4
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

The Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding the claims and allegations set forth in Riverkeeper's notice of intent to sue letters and Complaints.

The signatories for the Parties certify that they are authorized by the party they represent to enter into these Stipulations and Consent Decree.

COLUMBIA RIVERKEEPER                     KAMPMEIER & KNUTSEN, PLLC

By: s/ Lauren Goldberg                   By: s/ Brian A. Knutsen
Lauren Goldberg, Executive Director      Brian A. Knutsen, WSBA No. 38806
                                         Attorneys for Riverkeeper

PORT OF VANCOUVER U.S.A.                 SCHWABE, WILLIAMSON & WYATT, PC

By: s/ Julianna Marler                   By: s/ Connie Sue Martin
Julianna Marler, Chief Executive Officer Connie Sue Martin, WSBA No. 26525
                                         Attorneys for the Port

METROPOLITAN STEVEDORE COMPANY           WILLAMS, KASTNER & GIBBS, PLLC

By: s/ Brian Johnson                     By: s/ Mark Myers
Brian Johnson, Chief Commercial Officer  Mark Myers, WSBA No. 15362
                                         Attorneys for the Metro

VANCOUVER BULK TERMINAL LLC              MILLER NASH LLP

By: s/ Stephanie Goetz                   By: s/ Steven F. Hill
Stephanie Goetz, General Manager         Steven Hill, WSBA No. 23694
                                         Attorneys for VBT

CONSENT DECREE - 5
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

## II.     ORDER AND DECREE.

THIS MATTER came before the Court upon the foregoing Stipulations of the Parties and joint motion for entry of Consent Decree. Having considered the Stipulations and the terms and conditions set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.     This Court has jurisdiction over the Parties and the subject matter of this action pursuant to section 505(a) of the CWA, 33 U.S.C. § 1365(a).

2.     This Consent Decree shall inure to the benefit of, and be binding upon, the Parties and their successors, assigns, officials, agents, representatives, officers, directors, and employees. Changes in the organizational form or status of a party shall have no effect on the binding nature of this Consent Decree or its applicability.

3.     This Consent Decree and any injunctive relief ordered within applies solely to the Port's operation and oversight of the Port Facility, which is subject to the Port Permit.

4.     This Consent Decree is a full and complete settlement and release of all claims alleged against the Port, Metro, and VBT in Riverkeeper's notice of intent to sue letters and Complaints, and all other claims known or unknown existing as of the date of entry of this Consent Decree related to alleged violations of the Port Permit and the Bulk Terminal Permit that could be asserted under the CWA against the Port, Metro, or VBT. These claims are released and dismissed with prejudice. Further, Riverkeeper hereby releases and covenants not to sue the Port, Metro, and VBT for alleged violations of section 301(a) of the CWA, 33 U.S.C. § 1311(a), resulting from discharges of copper ore, other bulk commodities, and/or other pollutants from operations at the Bulk Terminal that occur through December 31, 2027.

5.     This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Riverkeeper in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of the Port, Metro, and/or VBT.

CONSENT DECREE - 6
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

6. The Port agrees to the following terms and conditions in full and complete satisfaction of all the claims covered by this Consent Decree:

A. The Port shall fully comply with the terms and conditions of the Port Permit, or any successor NPDES permit authorizing discharges of stormwater associated with industrial activity from the Port Facility. Nothing in this sub-paragraph affects the Port's ability to request that Ecology terminate NPDES permit coverage for the Port Facility as permitted under the terms and conditions of the Port Permit or as otherwise authorized by law.

B. The Port shall not modify or otherwise revise Section 15.B of the Lease Agreement and if copper continues to be handled at the Bulk Terminal, the Port shall otherwise take whatever actions are reasonably necessary to ensure that, no later than December 31, 2027, VBT (or any successor operator of the Bulk Terminal) has completed construction and began operations of a rotainer system at the Bulk Terminal or an alternative system that provides comparable or greater environmental benefits for handling copper.

C. The Port shall, within 180 days of the entry of this Consent Decree, develop and implement an operations and maintenance plan for the bioretention treatment system at Terminal 2 of the Port Facility ("T2 O&M Plan"), as depicted in Exhibit 1 to this Consent Decree.

i. The T2 O&M Plan shall include a program to track contaminant accumulation in the bioretention treatment system media and for renovating the system before performance deteriorates.

ii. The T2 O&M Plan shall provide for annual coring after each wet season of the full depth of the media at a minimum of three locations evenly spaced over the surface and for analysis of a minimum of three core segments for copper and zinc.

iii. The T2 O&M Plan shall include a protocol to use the data, in conjunction with discharge monitoring results, to prescribe criteria for scheduling renovation.

CONSENT DECREE - 7
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

D. The Port shall, within 180 days of entry of this Consent Decree by the Court, install a berm to prevent the laydown area between Berth 9 and Berth 10, as depicted in Exhibit 1 to this Consent Decree, from draining to the Columbia River at locations where elevation readings show a path to the Columbia River.

E. The Port shall, within one hundred and eighty days of entry of this Consent Decree by the Court, relocate metal stored in the boneyard near the maintenance shop, as depicted in Exhibit 1 to this Consent Decree, to a location where it will not generate or come into contact with stormwater runoff.

F. The Port shall develop and implement a study ("T4 Study") to identify: (1) the locations most responsible for exceedances of the Port Permit's benchmark for total copper at Sample Point T4M, as depicted in Exhibit 1 to this Consent Decree; (2) the most effective catch basin inserts to capture copper; (3) the most effective locations for installation; and (4) the replacement schedule to sustain performance needed to achieve the copper benchmark at T4M. The T4 Study should provide for the following:

    i. An investigation of alternatives to be tried if the currently-used Stormwater Biochar drain insert does not yield adequate performance;

    ii. Particular emphasis on drains in the vicinity of the gutters registering the highest copper concentrations (> 30,000 mg/kg) on the map titled 2018 Gutter Samples, Copper Concentrations (These drains extend from approximately the southwest corner of Building 2835 in the west to the northeast corner of Building 2565 in the east and Building 2805 in the south to a drain east of the southeast corner of Building 2845 in the north.);

    iii. Inclusion of some drains registering the second highest copper concentrations (10,000-30,000 mg/kg) located within the area having the highest concentrations and to the east, west, and north of this area;

    iv. Conducting a series of tests with the currently-used Stormwater Biochar drain insert in at least 25 percent of each set of drains;

CONSENT DECREE - 8
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

        v.      Sampling influent runoff and insert discharge in each drain during at least 6 precipitation events during October-March and at least 2 events during April-September following entry of this Consent Decree by the Court;

        vi.     Analysis of the data as they become available to judge if the Stormwater Biochar performance is decreasing over time and replacing any installation that experiences a decrease in concentration reduction of 20 percent or more over the course of the test, unless the influent concentrations are 100 ppb or less;

        vii.    Analysis of the data, in conjunction with T4M discharge monitoring results, to determine if the Stormwater Biochar inserts can likely aid in meeting the copper benchmark, the extent of their application required to do so, and the anticipated replacement frequency to sustain performance;

        viii.   Preparation of a report presenting the T4 Study's results and conclusions to Riverkeeper for review and comment within two months of completing the year of sampling;

        ix.     Revising the stormwater pollution prevention plan ("SWPPP" for the Port Facility to incorporate the T4 Study's recommendations on the use, maintenance and replacement frequency of catch basin inserts necessary to achieve the copper benchmark at monitoring point T4M;

        x.      If it is determined that the Stormwater Biochar inserts are not sufficient to prevent copper benchmark exceedances during the T4 Study or at its conclusion, an alternative insert shall be selected and the T4 Study repeated until an option yielding acceptable performance is identified. If analysis of the data at the conclusion of the T4 Study or thereafter concludes that inserts are not necessary due to changes in copper handling practices, the Port may select (1) no inserts, (2) a reduced maintenance schedule, or (3) alternative media types; and such changes will be reflected in the Port's SWPPP

CONSENT DECREE - 9
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

G. Upon entry of this Consent Decree by the Court and for a period of three years the Port shall, no later than forty-five (45) days following each calendar quarter, send via e-mail to Riverkeeper copies of the following Port Permit-related documents that the Port has transmitted to, or received from, Ecology during the previous calendar quarter: discharge monitoring reports ("DMRs"), annual reports, engineering reports, and inspection reports. Riverkeeper shall provide the Port's counsel the recipient e-mail address for such Port Permit-related documents no later than fourteen (14) days after entry of this Consent Decree by the Court.

7. The Port shall take the following additional measures and make the following payment to benefit water quality in the Columbia River Basin:

A. The Port shall implement the following measures expected to improve the quality of stormwater discharges to the Columbia River from the Port Facility:

i. Terminal 4 Stormwater Treatment Enhancement Project – 1 (T4-STEP 1), estimated to cost approximately $793,100, will test and analyze treatment polishing options for the discharge at T4M for ISGP parameters with the intent of consistently meeting benchmarks. The polishing system will provide end of pipe treatment for the entire Terminal 4 pond drainage basin integrating the latest industry standard treatment media and technologies;

ii. The Port shall purchase a Vactor Truck, estimated to cost approximately $634,000, within ninety (90) of entry of this Consent Decree by the Court. The Port shall revise its SWPPP within ninety (90) days of receipt of the Vactor Truck to include best management practices defining how the Vactor Truck will be used at the Port Facility to improve stormwater discharges, including how the Port will provide services with the Vactor Truck at cost to all of the Port's tenants;

iii. The Port shall provide training, materials, staging location and labor to facilitate construction of 5 Grattix units to be provided at no cost to businesses in

CONSENT DECREE - 10
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Oregon and Washington along the Columbia River to help reduce metals in roof runoff, estimated to cost approximately $4,400;

      B.      The Port shall fund and implement projects to improve water quality in the flushing channel that connects the Columbia River to Vancouver Lake ("Flushing Channel Projects") at an estimated cost of approximately $150,000. The Flushing Channel Projects shall be completed by January 31, 2024. To the extent that the Port implements the Flushing Channel Projects at a cost below $150,000, the Port shall pay the difference between $150,000 and the costs of the Flushing Channel Projects to the Lower Columbia Fish Recovery Board for projects that benefit water quality in the Columbia River Basin as described in Exhibit 2 to this Consent Decree. Such payment shall be made within six (6) months of completion of the Flushing Channel Projects by check payable and mailed to the Lower Columbia Fish Recovery Board, 11018 NE 51st Circle, Vancouver, Washington 98682, and shall bear the notation "Columbia Riverkeeper v. Port of Vancouver U.S.A., Clean Water Act Settlement," with a copy provided to Riverkeeper at that same time.

      C.      The Port shall make a payment in the amount of $500,000 to the Lower Columbia Fish Recovery Board for projects that benefit water quality in the Columbia River Basin as described in Exhibit 2 to this Consent Decree. Such payment shall be made within seven (7) days of the entry of this Consent Decree by the Court by check payable and mailed to the Lower Columbia Fish Recovery Board, 11018 NE 51st Circle, Vancouver, Washington 98682, and shall bear the notation "Columbia Riverkeeper v. Port of Vancouver U.S.A., Clean Water Act Settlement," with a copy provided to Riverkeeper at that same time. The Lower Columbia Fish Recovery Board shall provide a brief summary to the Port and Riverkeeper regarding what projects receive funding from this payment, as those funds are awarded.

      8.      Within seven (7) days of entry of this Consent Decree by the Court, the Port and/or Metro shall pay Riverkeeper's attorney fees and costs in the amount of $600,000 in full and complete satisfaction of any claims Riverkeeper may have against the Port, Metro, and/or

CONSENT DECREE - 11
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

VBT under the CWA for attorney fees and litigation costs and expenses incurred in this matter in pursuing the claims against the Port, Metro, and/or VBT. Such payment shall be made via electronic funds transfer or wire transfer to the Oregon IOLTA account maintained by Kampmeier & Knutsen, PLLC. Riverkeeper's above-signed counsel hereby certifies that the actual costs and fees incurred in pursing Riverkeeper's claims against the Port, Metro, and/or VBT in this matter equal or exceed $600,000. Counsel for Riverkeeper shall provide counsel for the Port and Metro the account information necessary for this payment within fourteen (14) days of the Parties' execution of this Consent Decree. The Port and Metro shall be jointly and severally liable for the payment required by this paragraph.

9. A force majeure event is any event outside the reasonable control of the Port and/or VBT that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that the Port and/or VBT timely notifies Riverkeeper of the event, the steps that the Port and/or VBT will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

10. The Port and/or VBT will notify Riverkeeper of the occurrence of a force majeure event as soon as reasonably possible but in any case, no later than fifteen (15) days after the Port or VBT become aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event. By way of example and not limitation, force majeure events include

    a.    Acts of God, war, insurrection, or civil disturbance;

    b.    Earthquakes, landslides, fire, floods;

    c.    Actions or inactions of third parties over which the Port has no or limited control;

CONSENT DECREE - 12
No. 3:21-cv-05486-BHS

   d. Unusually adverse weather conditions;

   e. Restraint by court order or order of public authority;

   f. Strikes;

   g. Any permit or other approval sought by the Port and/or VBT from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where the Port and/or VBT has timely and in good faith sought the permit or approval;

   h. Litigation, arbitration, or mediation that causes delay;

   i. Epidemics and pandemics, including but not limited to, COVID-19 related delays;

   j. Supply chain issues and delays.

  11. This Court retains jurisdiction over this matter and, while this Consent Decree remains in force, this case may be reopened without filing fee so that the Parties may apply to the Court for any further order or relief that may be necessary regarding compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree until it is terminated. A precondition to any application to the Court under this paragraph is that the Parties must first seek to resolve the dispute themselves as follows: 1) the party identifying or wishing to raise an issue or dispute must provide the other party a written notice detailing the nature of the issue or dispute; and 2) within thirty (30) days of receipt of such notice, the Parties shall meet and confer regarding the issue or dispute. If no resolution is reached at that meeting or within thirty (30) days of the written notice, whichever occurs first, either party may file a motion with this Court to resolve the dispute. In any action to enforce this Consent Decree, the Court shall apply the same standard applied by courts in awarding fees and costs under section 505(d) of the CWA, 33 U.S.C. 1365(d).

  12. The Effective Period of this Consent Decree is as follows. This agreement shall take effect upon entry of the Consent Decree by the Court. The provisions of this Consent

CONSENT DECREE - 13
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

Decree, except for Riverkeeper's releases of claims described in paragraph II.4 of this Consent Decree, shall terminate five years from the Court's entry of this Consent Decree or upon the Port's compliance with all of the payment obligations contained in paragraphs II.7, and II.8 of this Consent Decree, whichever occurs last.

13. All notices and other communications regarding this Consent Decree shall be in writing and shall be fully given by mailing via first-class mail, postage pre-paid; by delivering the same by hand; or by sending the same via e-mail to the following addresses, or to such other addresses as the Parties may designate by written notice, provided that communications that are mailed shall not be deemed to have been given until three business days after mailing:

For Riverkeeper:

Columbia Riverkeeper
c/o Simone Anter
P.O. Box 950
Hood River, Oregon 97031
simone@columbiariverkeeper.org

Kampmeier & Knutsen, PLLC
c/o Brian Knutsen
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
brian@kampmeierknutsen.com

For the Port:

Port of Vancouver U.S.A.
c/o Patty Boyden
3103 N.W. Lower River Road
Vancouver Washington 98660
pboyden@portvanusa.com

Schwabe, Williamson & Wyatt, PC
c/o Connie Sue Martin
1420 5th Avenue, Suite 3400
Seattle, Washington 98101
csmartin@schwabe.com

For Metro:

Metropolitan Stevedore Company
c/o Brian Johnson CCO
Nautilus International Holding Corporation
3806 Worsham Avenue
Long Beach, California 90808
Brian.Johnson@Nautilustintl.com

Williams, Kastner, & Gibbs, PLLC
c/o Mark Myers
601 Union Street, Suite 4100
Seattle, Washington 98101-2380
mmyers@williamskastner.com

For VBT:

Vancouver Bulk Terminal LLC
c/o Stephanie Goetz, General Manager
3103 N.W. Lower River Road
Vancouver Washington 98660
Stephanie.goetz@vbt-llc.com

Miller Nash LLP
c/o Steven F. Hill
500 Broadway Street, Suite 400
Vancouver, Washington 98660
Steve.hill@millernash.com

CONSENT DECREE - 14
No. 3:21-cv-05486-BHS

14. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This agreement may not be modified or amended except by a writing signed by all Parties and entered by the Court.

15. Each party acknowledges that it has sought and obtained the advice of its own independent legal counsel before executing this Consent Decree. The Parties acknowledge that they have had the opportunity to freely negotiate the terms of this Consent Decree.

16. If for any reason the Court should decline to approve this proposed Consent Decree in the form presented, this Consent Decree is voidable at the discretion of any party. The Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

17. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("U.S. EPA"). Therefore, upon the filing of this proposed Consent Decree by the Parties, Riverkeeper will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

DATED this 14th day of November, 2023.

BENJAMIN H. SETTLE
United States District Judge

CONSENT DECREE - 15
No. 3:21-cv-05486-BHS

KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515